UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

HEATHER E. DANIELS,

                        Plaintiff,                                  **COMPLAINT**

      - against -

BABETTE HADDAD, MCHNY LLC d/b/a                 **JURY TRIAL DEMANDED**
MAXWELL'S CHOPHOUSE, and
MOCAL ENTERPRISES INC.,

                        Defendants.

------------------------------------------------------------------x

        Plaintiff HEATHER E. DANIELS, by her undersigned attorneys, alleges for her Complaint against defendants as follows:

## INTRODUCTION

        1.     This is an action to recover unpaid wages, improper deductions from wages, and related relief, brought by a former employee of defendants under Section 16 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, 207 and 216, and Sections 191, 193, 195, 198, 652 and 663 of the New York Labor Law ("Labor Law") and related regulations issued by the New York State Department of Labor.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, which grants this Court original jurisdiction over claims involving a federal question of law.  Supplemental jurisdiction over the New York Labor Law claims exists pursuant to 28 U.S.C. § 1367.

3.      This action is brought in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2).  One or more of the defendants resides in this District and all defendants are residents of New York; and the events or omissions giving rise to plaintiff's claims occurred in this District.

## PARTIES

4.      Plaintiff Heather E. Daniels ("Daniels") was employed by defendants as a personal assistant to defendant Babette Haddad ("Haddad")  from in or around October 2014 to on or around August 2, 2017.

5.      At all relevant times, Daniels was an "employee" of Haddad within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1), and Section 190(2) of the Labor Law.  During the entire period of her employment, she was also an employee of defendant MCHNY LLC or Mocal Enterprises Inc., each of which paid her wages and was identified on her pay stubs as her employer while she worked for Haddad.

6.      Defendant Haddad is a resident of New York, residing at 125 East 62nd Street, New York, New York 10065.

7.      Defendant MCHNY LLC is a New York limited liability company, with its headquarters offices located at 1182 Broadway, New York, New York.

8.      MCHNY LLC is in the business of owning and operating a restaurant called

Maxwell's Chophouse, which is located at 1184 Broadway, New York, New York.

9.      Upon information and belief, defendant Haddad is the member of MCHNY LLC with the largest percentage ownership interest in the company.

10.     Defendant Haddad was one of the ten members with the largest ownership interest in MCHNY LLC during the entire period that plaintiff was employed by MCHNY LLC.

11.     Defendant Mocal Enterprises Inc. ("Mocal") is an Indiana corporation with its headquarters offices and principal place of business being located at 1182 Broadway, New York, New York.

12.     Mocal is in the business of acquiring, developing, managing and renting real estate.

13.     Mocal's sole or majority shareholder is defendant Haddad's husband, Calvin Haddad. Calvin Haddad is also the chief executive officer of Mocal.

14.     At all times relevant to this action, Haddad personally oversaw and managed MCHNY LLC's overall and day-to-day business activities, including the determination of employee wages, the method and manner of payment to employees, and hiring, firing and other personnel policies and actions.

15.     During the entire time that plaintiff was paid by defendant Mocal, defendant Haddad acted as plaintiff's employer and supervisor and made the decision to hire her, set her wages, determined the method and manner of payment to her, assigned work tasks to her, determined her work schedule, evaluated her work performance, and had the authority to terminate her.

16.     During the entire time that plaintiff was paid by defendant MCHNY LLC, defendant Haddad acted as plaintiff's employer and supervisor and made the decision to hire her, set her wages, determined the method and manner of payment to her, assigned work tasks to her, determined her

-3-

work schedule, approved any days off she took, evaluated her work performance, and had the authority to terminate her, which she, in fact, did on August 2, 2017.

17. While at all times relevant to this action, plaintiff's job was to serve as Haddad's personal assistant, plaintiff's wages were paid by Mocal from October 2014 to February 2017 and paid by MCHNY LLC from February 2017 until plaintiff's termination by Haddad on or about August 2, 2017.

18. At all times relevant to this action, defendant Haddad was an employer of plaintiff within the meaning of Sections 2(6), 190(3) and 651(6) of the New York Labor Law and Section 3(d) of the FLSA, 29 U.S.C. § 203(d). In addition, defendant Mocal was plaintiff's employer within the meaning of all relevant provisions of FLSA and the N.Y. Labor Law from October 2014 until February 2017 and defendant MCHNY LLC was plaintiff's employer within the meaning of these statutes from February 2017 to August 2, 2017.

19. At all relevant times, Mocal had (i) an annual gross volume of sales or business of no less than $500,000 and (ii) employees engaged in commerce or in the production of goods for commerce, or who handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce.

20. At all relevant times, MCHNY LLC had (i) an annual gross volume of sales or business of no less than $500,000 and (ii) employees engaged in commerce or in the production of goods for commerce, or who handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce.

21. At all times relevant to this action, defendants Mocal and MCHNY LLC was each

-4-

an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

22.     By letter dated September 8, 2017, plaintiff, through her attorneys, notified defendant Babette Haddad of her intention to hold her personally liable for any unsatisfied judgment that may be obtained in this action against MCHNY LLC based on Ms. Haddad's status as one of the ten members of MCHNY LLC with the largest percentage ownership interest in that company, pursuant to Limited Liability Company Law § 609.  A copy of the letter is attached to this complaint as Exhibit 1.

23.     By means of the same letter (Ex. 1), a copy of which also mailed to Babette Haddad's husband, Calvin Haddad, on September 8, 2017, plaintiff gave notice to Calvin Haddad of her intention to hold him personally liable for any unsatisfied judgment that may be obtained in this action against Mocal Enterprises Inc. based on Mr. Haddad's status as one of the ten shareholders of Mocal with the largest percentage ownership interest in that corporation, pursuant to Business Corporation Law § 630.

## FACTS

24.     Plaintiff was hired by defendant Haddad to work as her executive assistant and personal assistant, beginning in or about October 2014.

25.     Plaintiff's wages were paid by defendant Mocal from the beginning of her employment (October 2014) until approximately February 2017, when her wages began being paid to her by MCHNY LLC, instead.

26.     Copies of sample pay stubs issued to plaintiff by Mocal are attached to this complaint

as Exhibit 3.

27.     Copies of sample pay stubs issued to plaintiff by MCHNY LLC are attached to this complaint as Exhibit 3.

28.     While employed and paid by Mocal, plaintiff's job was to work as defendant Haddad's personal assistant.  Her job duties during this period consisted primarily of light bookkeeping; screening phone calls; calendar management; scheduling appointments; sending and responding to e-mails; ordering office supplies; taking notes or minutes of meetings; arranging catering (*i.e.,* ordering food) for meetings; ordering lunch for defendant Haddad, her husband, and their staff; filing (including organizing and maintaining digital and hard copy files); posting job listings for restaurant and office staff openings; scheduling interviews for defendant Haddad and her daughter (Melissa Haddad) with job applicants; confirming restaurant reservations; sending credit card authorization forms and menus to customers booking private dining room events; writing, revising and printing menus and wine lists; and calling restaurant vendors and suppliers when services or supplies (such as plumbing repairs, alarm maintenance, telephone service maintenance, repair or replacement of broken glass, refilling of soda dispensers, and restocking of bar snacks) were needed.  Her duties also included assisting defendant Haddad's personal staff (at her home), including ordering personal items for delivery to her home and to her home in Florida; ordering Christmas gifts for the Haddad family; picking up groceries; picking up medication and other supplies from drug stores for the Haddads; babysitting defendant Haddad's grandson; booking travel arrangements for defendant Haddad, her husband, and their household staff; and performing miscellaneous tasks and personal errands for defendant Haddad and her family, such as returning clothes and other merchandise they had purchased, searching for defendant Haddad's lost dog, and

-6-

arranging for the shipment of household goods and personal items between defendant Haddad's Manhattan and Florida homes.

29.     In or about February 2017, defendant MCHNY LLC began paying plaintiff's wages, instead of Mocal.  This change in the legal entity that employed plaintiff and paid her wages did not include any significant changes in her work duties or responsibilities and plaintiff continued to serve as defendant Haddad's executive assistant and/or personal assistant, performing the same job responsibilities, duties and task that she performed while being paid by Mocal.

30.     When first hired by defendants Haddad and Mocal in or around October 2014, defendant was paid at a rate of $42,000 per year, or $807.70, per week.  Her pay continued at that rate throughout 2015.

31.     Beginning in or around the beginning of February 2015, plaintiff began regularly working in excess of forty hours per week, which she continued to do, on a regular basis, each week through the end of the year (and throughout the remaining duration of her employment by defendants).  Plaintiff estimates that she worked forty-eight work weeks in excess of 40 hours, with an average of ten to fifteen of overtime hours worked per week, in 2015.  Although her regular scheduled work week was Monday through Friday, from 9:00 a.m. to 6:00 p.m., she did not take lunch breaks, instead working through what should have been her lunch break, and regularly and frequently worked until 7:00 p.m. or later, sometimes working until approximately 8:00 p.m. or later and sometimes working on weekends (*e.g.,* from home).  Plaintiff was never paid any overtime wages or premium for the hours she worked in excess of 40 hours in a work week, she was always paid her regular weekly pay of $807.70 (regardless of the actual number of hours she worked), and

-7-

her pay stubs never accurately reflected the actual amount of hours that she had, in fact, worked. Copies of some pay stubs issued to plaintiff in 2015 are attached to this complaint as Exhibit 2.

32.     Beginning in or around January 2016, plaintiff's pay was increased to a rate of $900.00 per week or $46,800 per year.

33.     In 2016, plaintiff estimates that she worked approximately fifty-one weeks. Throughout the year, plaintiff regularly worked in excess of forty hours per work week but was never paid any overtime wages or premium for the hours she worked in excess of 40 hours in a work week, she was always paid her regular weekly pay of $900.00 (regardless of the actual number of hours she worked), and her pay stubs never accurately reflected the actual amount of hours that she had, in fact, worked. Plaintiff estimates that she worked fifty-one work weeks in excess of 40 hours, with an average of ten to fifteen of overtime hours worked per week, in 2016. Although her regular scheduled work week continued to be Monday through Friday, from 9:00 a.m. to 6:00 p.m., she did not take lunch breaks, instead working through what should have been her lunch break, and regularly and frequently worked until 7:00 p.m. or later, sometimes working until approximately 8:00 p.m. or later and sometimes working on weekends.

34.     Beginning in or around January 2017, plaintiff's pay was increased to a rate of $52,000 per year or $1,000 per week. Plaintiff estimates that she worked twenty-nine weeks in 2017, took one sick day, and worked overtime (*i.e.,* in excess of 40 hours in a work week) in twenty-eight work weeks in 2017, with an average of ten to fifteen hours of overtime worked per week during those weeks. Plaintiff was never paid any overtime wages or premium for the hours she worked in excess of 40 hours in a work week, she was always paid her regular gross weekly pay of $1,000

-8-

(regardless of the actual number of hours she worked), and her pay stubs never accurately reflected the actual amount of hours that she had, in fact, worked.

35.     Beginning in or around January 2017, plaintiff's pay checks began to be issued to her by defendant MCHNY LLC, instead of Mocal.  MCHNY LLC continued to issue her her weekly pay checks until she was terminated by defendant Haddad on or about August 2, 2017.

36.     In or around February 2015, defendant Haddad agreed to lend plaintiff $6,600.00, after refusing to pay plaintiff, or increase plaintiff's pay to, the pay rate she had told her she would be paid ($45,000 annually to start with a possible increase to $65,000 annually after three months) at the time she hired plaintiff.  The loan amount was given to plaintiff by defendant Mocal in or about February 2015.  Beginning sometime in February or March of 2015, Mocal deducted $200 per pay check from defendant's weekly pay check, as loan payments from plaintiff.  These weekly pay deductions were made until a total of $6,600.00 had been deducted from plaintiff's weekly pay checks and the loan was acknowledged as having been repaid in full, with the final loan payment being deducted from plaintiff's November 5, 2015 wage payment.

37.     No written loan agreement was ever entered into between plaintiff and Mocal (or any other defendant) regarding the $6,600.00 loan from Mocal.  No written authorization to deduct the loan payments was ever signed or provided to defendants by plaintiff.  No written notice of the terms and conditions of the loan or related loan payments or the details of the manner in which deductions from plaintiff's pay would be made was ever provided to plaintiff.

38.     In or about August 2016, defendant Haddad agreed to lend plaintiff another $6,000.00, after refusing plaintiff's continuing requests for a pay increase.  The loan amount was given to plaintiff by defendant MCHNY LLC in or about August 2016.  Beginning in or about

-9-

January 2017, MCHNY LLC deducted $100 from every other pay check issued to plaintiff by MCHNY LLC as payments toward the outstanding loan balance.

39.     In or about July 2017 – before the $6,000.00 August 2016 loan had been fully repaid – defendant MCHNY LLC provided an additional $2,900.00 to plaintiff as a loan, which defendant Haddad had agreed to do in response to plaintiff's continuing requests for a pay increase. MCHNY LLC continued to make bi-weekly deductions of $100 from plaintiff's wages as loan payments toward the outstanding balances on the 2016 and 2017 loans.  A total of $1,100.00 was deducted from plaintiff's wages by defendants as payments toward the 2016 and 2017 loans.

40.     No written loan agreement was ever entered into between plaintiff and MCHNY LLC or the other defendants regarding either of the loans from MCHNY LLC.  No written authorization to deduct the loan payments was ever signed or provided to defendants by plaintiff regarding the MCHNY LLC loans.  No written notice of the terms and conditions of the loans or related loan payments or the details of the manner in which deductions from plaintiff's pay would be made was ever provided to plaintiff.

41.     While employed and paid by defendant MCHNY LLC, plaintiff sometimes used a MCHNY LLC credit card to pay for food ordered for herself and other MCHNY LLC staff or to pay for her monthly train pass. Defendants MCHNY LLC and Haddad were aware of and approved of this practice and MCHNY LLC made deductions from plaintiff's wages to reimburse itself for such charges, although no written explanation of how such deductions were to be made was ever provided to plaintiff and plaintiff never signed a written authorization allowing these deductions to be made from her wages.

42.     Neither Mocal nor MCHNY LLC provided plaintiff with a notice containing the

-10-

information required by N.Y. Labor Law § 195(1) at the time that she was hired or became employed by them, within ten business days of her first day of employment with either of them, or at any other time.

43.     On or about July 31, 2017, plaintiff gave Haddad notice of her intention to resign from her job, effective September 15, 2017.  Haddad's response was to terminate her, effective August 2, 2017, which was her last day of work.

44.     When defendant Haddad terminated plaintiff, she told plaintiff that she did not expect her to continue to make any loan payments to defendants.  Although plaintiff told Haddad that she would try to make payments of any outstanding balance in the future, if an when she was able to, Haddad responded that she did not expect or require her to do so.

45.     Plaintiff's last day of work was August 2, 2017.  She worked two days (Monday August 1, 2017 and Tuesday August 2, 2017), for a total of approximately 19 hours, during what turned out to be her final pay period (July 31, 2017 to August 6, 2017) while under defendants' employ.  She has never been paid any wages for the work she performed during this final pay period, despite having demanded that defendants Haddad and MCHNY LLC give her her final pay check. At her then regular hourly wage rate of $25.00, plaintiff is owed $475.00 for the hours she worked but was not paid for during her final pay period as an employee of defendants.

46.     Upon information and belief, defendants Haddad and MCHNY LLC have similarly refused to pay other former employees who have quit or were fired from their jobs at Maxwell's Chophouse their wages for the work they performed during their final pay period, *e.g.,* in 2017 prior to plaintiff's termination.

47.     On September 8, 2017, plaintiff notified defendants of her demand that they pay her

-11-

the overtime wages that she is owed.  A copy of the letter, sent to defendants on plaintiff's behalf

by her counsel, is attached to this complaint as Exhibit 1.

48.     On September 15, 2017, defendants responded to plaintiff's demand by threatening

to sue her for disgorgement of the wages she was payed while in their employ, based on a baseless

"faithless servant" claim, should she proceed with legal action to enforce her statutory wage claims.

Defendants also falsely and maliciously accused her of stealing a computer and misusing a company

credit card and suggested that she could be subjected to criminal "prosecution for her conduct," in

addition to counterclaims.  A copy of defendants' response to plaintiff's wage demand, which was

sent on defendants' behalf by their counsel, is attached to this complaint as Exhibit 4.


**FIRST CAUSE OF ACTION: FEDERAL OVERTIME WAGE VIOLATIONS**

49.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding

paragraphs as if fully set forth herein.

50.     Defendants have violated Section 7 of the FLSA, 29 U.S.C. § 207, by failing to pay

plaintiff one-and-one-half times her regular rate of pay for each hour she worked in excess of 40

during a work week.

51.     Defendants' failure to pay plaintiff for the overtime hours she worked (and their other

violations of state and federal law alleged herein) was not done in good faith and was not based on

a reasonable belief that its payroll practices complied with the law and was instead willful or done

with a reckless disregard for its lawfulness.

52.     Defendants are liable to plaintiff in the amount of the unpaid overtime compensation

-12-

she should have been paid, plus an equal amount in liquidated damages, plus reasonable attorney's fees and the costs of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION: NEW YORK STATE OVERTIME VIOLATIONS

53.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

54.      Defendants have violated the New York Labor Law and 12 NYCRR § 142-2.2 by failing to pay plaintiff one-and-one-half times her regular rate of pay for each hour she worked in excess of 40 during a work week.

55.     Pursuant to Labor Law §§ 198 and 663, defendants are liable to plaintiff in the amount of the unpaid overtime compensation she was entitled to receive but was not paid, pre-judgment interest, and liquidated damages, plus reasonable attorney's fees and the costs of this action.

## THIRD CAUSE OF ACTION: VIOLATION OF N.Y. LABOR LAW § 195(1)

56.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

57.     Plaintiff was not provided with the notice required by Labor Law § 195(1)(a) within ten days business days of her first day of employment by Mocal or at any time thereafter.

58.     Plaintiff was not provided with the notice required by Labor Law § 195(1)(a) within ten days business days of her first day of employment by MCHNY LLC or at any time thereafter.

59.     Pursuant to Labor Law § 198(1-b), plaintiff is entitled to damages of $50 for Mocal's

-13-

failure to provide the notice required by § 195(a)(1) within ten days of her commencement of employment by Mocal, plus an additional $50 per day for each work day that the violation continued, up to the statutory maximum total of $5,000, plus reasonable attorney's fees and the costs of this action. Plaintiff is therefore entitled to damages from Mocal (and Haddad) of $5,000, plus reasonable attorney's fees and costs, for Mocal's failure to comply with Labor Law § 195(1)(a).

60.     Pursuant to Labor Law § 198(1-b), plaintiff is entitled to damages of $50 for MCHNY LLC's failure to provide the notice required by § 195(a)(1) within ten days of her commencement of employment by MCHNY LLC, plus an additional $50 per day for each work day that the violation continued, up to the statutory maximum total of $5,000, plus reasonable attorney's fees and the costs of this action. Plaintiff is therefore entitled to damages from MCHNY LLC (and Haddad) of $5,000, plus reasonable attorney's fees and costs, for MCHNY LLC's failure to comply with Labor Law § 195(1)(a).

## FOURTH CAUSE OF ACTION: VIOLATION OF N.Y. LABOR LAW § 195(3)

61.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

62.     During the entire period that plaintiff was employed by defendants, she was never provided with provided with regular pay statements that complied with the requirements of Labor Law § 195(3). More specifically, the pay statements that plaintiff was provided by both Mocal and MCYNH LLC rarely, if ever, accurately stated the actual number of hours she had worked during the pay period in question (*e.g.,* by never including the overtime hours she worked and sometimes misstating the number of regular hours she worked); the pay statements (or "pay stubs") issued by

-14-

MCHNY LLC failed to list plaintiff's regular hourly rate of pay or overtime rate of pay; the pay stubs issued by Mocal failed to list plaintiff's overtime rate of pay; and the pay stubs issued by both entities failed to explain or state the basis for plaintiff's pay, "whether paid by the hour, shift, day, week, salary, piece, commission, or other" (Labor Law § 195(3)).

63.     Pursuant to Labor Law 198(1-d), plaintiff is entitled to damages of $250 for each weekly violation by Mocal that occurred, plus an additional $250 per work day for each work day any such violation continued, up to the statutory maximum amount of $5,000, plus reasonable attorney's fees and the costs of this action.  Plaintiff is therefore entitled to damages of $5,000, plus reasonable attorney's fees and costs, from defendant Mocal (and defendant Haddad) for Mocal's failure to comply with Labor Law § 195(3).

64.     Pursuant to Labor Law 198(1-d), plaintiff is entitled to damages of $250 for each weekly violation by MCHNY LLC that occurred, plus an additional $250 per work day for each work day any such violation continued, up to the statutory maximum amount of $5,000, plus reasonable attorney's fees and the costs of this action.  Plaintiff is therefore entitled to damages of $5,000, plus reasonable attorney's fees and costs, from defendant MCHNY LLC (and defendant Haddad) for MCHNY LLC's failure to comply with Labor Law § 195(3).

## FIFTH CAUSE OF ACTION: IMPROPER DEDUCTIONS FROM WAGES

65.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

66.     By making deductions from plaintiff's wages that were prohibited by N.Y. Labor law

§ 193 and its implementing regulations (*e.g.,* the loan payment deductions and credit card charge reimbursements), defendants have violated N.Y. Labor Law § 193 and 12 NYCRR §§ 195-2.1, 195-4.5 and 195-5.2.

67.     Pursuant to Labor Law §§ 198 and 663, defendants are liable to plaintiff in the amount of the deductions they improperly made from plaintiff's wages, plus pre-judgment interest, liquidated damages, and reasonable attorney's fees and the costs of this action.

## SIXTH CAUSE OF ACTION: WITHHOLDING PLAINTIFF'S FINAL PAY CHECK

68.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

69.     By improperly withholding and refusing to give plaintiff her final paycheck, defendants Haddad and MCHNY LLC have violated Labor Law §§ 191(1)(d) and (3).

70.     Pursuant to Labor Law §§ 198 and 663, defendants Haddad and MCHNY LLC are liable to plaintiff in the amount of the unpaid wages plaintiff was entitled to receive for the hours she worked during her final pay period but was not paid, plus pre-judgment interest, liquidated damages, and the costs of this action including reasonable attorney's fees.

## SEVENTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF FLSA

71.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

72.     By threatening to sue plaintiff for, *inter alia*, baseless claims, while also falsely

-16-

accusing her of engaging in misconduct and committing crimes, in response to her demand to be paid the overtime wages she is owed, defendants have engaged in unlawful retaliation, in violation of FLSA's anti-retaliation provision, 29 U.S.C, § 215(a)(3).

73.     Plaintiff has suffered emotional distress as a result of defendants' unlawful retaliation.

74.     Because of their unlawful retaliation, defendants are liable to plaintiff for compensatory and punitive damages.


**EIGHTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF N.Y. LABOR LAW**

75.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

76.     By threatening to sue plaintiff for, *inter alia*, baseless claims, while also falsely accusing her of engaging in misconduct and committing crimes, in response to her demand to be paid the overtime wages she is owed, defendants have engaged in unlawful retaliation, in violation of the N.Y. Labor Law's anti-retaliation provision, NYLL § 215.

77.     Plaintiff has suffered emotional distress as a result of defendants' unlawful retaliation.

78.     Because of their unlawful retaliation, defendants are liable to plaintiff for compensatory and punitive damages.


**NINTH CAUSE OF ACTION: FEDERAL MINIMUM WAGE VIOLATION**

79.     As and for an alternative cause of action to plaintiff's sixth cause of action,

defendants Haddad and MCHNY LLC's failure to pay plaintiff any wages for the hours she worked during her final pay period violates the federal minimum wage laws 29 U.S.C. § 206.

80.     Defendants Haddad and MCHNY LLC are liable to plaintiff in the amount of the unpaid wages she was entitled to receive under FLSA's minimum wage provisoins for the hours she worked during her final pay period, plus liquidated damages, and the costs of this action including reasonable attorney's fees.

### TENTH CAUSE OF ACTION: N.Y. STATE MINIMUM WAGE VIOLATION

81.     As and for an alternative cause of action to plaintiff's sixth cause of action, defendants Haddad and MCHNY LLC's failure to pay plaintiff any wages for the hours she worked during her final pay period violates N.Y. state's minimum wage laws, including Labor Law § 652.

82.     Defendants Haddad and MCHNY LLC are liable to plaintiff in the amount of the unpaid wages she was entitled to receive under N.Y.'s minimum wage laws for the hours she worked during her final pay period, plus pre-judgment interest, liquidated damages, and the costs of this action including reasonable attorney's fees.

### TRIAL BY JURY

Plaintiff requests a trial by jury on all claims asserted herein.

-18-

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that a judgment be granted as follows:

1.      Awarding plaintiff the wages she is due under the FLSA and N.Y. Labor Law for the hours she worked in excess of forty hours in a work week for which she was not paid;

2.      Awarding plaintiff $5,000 in damages for defendants' violation of N.Y. Labor Law § 195(1)(a).

3.      Awarding plaintiff $5,000 for defendants' violation of N.Y. Labor Law § 195(3).

4.      Awarding plaintiff an amount equal to all of the improper deductions made by defendants from plaintiff's wages;

5.      Awarding plaintiff the wages she is due under the N.Y. Labor Law for the hours she worked during her final pay period but was not paid for;

6.      Awarding plaintiff compensatory and punitive damages for defendants' unlawful retaliation, in amounts to be determined at trial;

7.      As an alternative to the relief request in request for relief No. 5, should that relief not be granted, payment of the minimum wage to plaintiff for each hour she worked during her final pay period but was not paid for;

8.      Awarding plaintiff liquidated damages under both the FLSA and N.Y. Labor Law;

9.      Awarding plaintiff pre-judgment interest and post-judgment interest;

10.     Awarding plaintiff the costs of this action, including reasonable attorney's fees; and

11.     Awarding such other relief as this Court deems just and proper.

Dated:  October 19, 2017

LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiff

By: _____

Daniel R. Bright (DB-9373)
387 Park Avenue South, 5th Floor
New York, New York  10016
(646) 588-4871